IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DERIEL HEAD,
    Plaintiff,

vs.                                       Case No.: 5:10cv190/RS/EMT

D. ELLIS, et al.,
    Defendants.

## REPORT AND RECOMMENDATION

       This cause filed pursuant to Title 42 United States Code Section 1983 is presently before the court on Plaintiff's fourth amended civil rights complaint "complaint" (doc. 39). Leave to proceed in forma pauperis was granted, and no initial partial filing fee was assessed (doc. 8).[1]

       Because Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals for failure to state a claim under 1915(e)(2)(B)(ii), which tracks the language of Fed. R. Civ. P. 12(b)(6), are governed by the same standard as that rule. Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. See Pielage v. McConnell, 516 F.3d 1282 (11th Cir. 2008); Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006); Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). Plaintiff must allege more than "labels and conclusions" or a

---

[1] Plaintiff has since made two partial payments totaling $15.00 (*see* docs. 12, 13).

"formulaic recitation of the elements of a cause of action," and his complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65, 1973 n.14, 167 L. Ed. 2d 929 (2007) (declining to apply a heightened pleading standard, and abrogating Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")). A complaint is subject to dismissal for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)). Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1263 (11th Cir. 2004)). Upon review of Plaintiff's complaint, the court concludes that Plaintiff has not presented an actionable claim against any of the named Defendants, despite having been given several opportunities to amend his complaint, and that sua sponte dismissal is therefore warranted. Vanderberg v. Donaldson, 259 F.3d 1321, 1323 (11th Cir. 2001).

Plaintiff was incarcerated at Gulf Correctional Institution ("GCI") in Wewahitchka, Florida at the time the events giving rise to this complaint took place, although he is currently incarcerated at Baker Correctional Institution (*see* doc. 39 at 2). Named as Defendants in the most recent version of his complaint are current Florida Department of Corrections ("DOC") Secretary Kenneth Tucker; former DOC Secretary Edwin Buss[2]; GCI Warden D. Ellis; Dr. N. B. Gilo; Svcs. Admin. M. K. Ake; and medical staff Ms. Lytle and Mr. D. Wallace. Plaintiff complains that he has received inadequate medical treatment for a hernia he developed in either 2007 or 2008 (*id.* at 4). He did not go to sick call until late 2008 or early 2009 "when the pain from the hernia became worse" (*id.* at 5). When he did, Plaintiff alleges, Defendant Wallace told him that the DOC "rarely treats hernias" and instructed him how to push the protruding hernia back into his abdomen (*id.* at 5). Plaintiff states that he used the described technique but that this offered only temporary relief (*id.*). He also

---

[2] This Defendant was not named in the Third Amended Complaint.

describes the episodes when the hernia protrudes as becoming more frequent and painful and "accompanied by nausea and dizziness" (*id.*)  Nonetheless, Plaintiff did not seek further medical attention.  When Plaintiff had his annual medical checkup in December of 2009 he discussed the problem with Defendant Lytle (*id.*).  Ms. Lytle described the same procedure for pushing the hernia back in, and instructed Plaintiff to return for sick call (*id.*).  Again, it does not appear that Plaintiff sought further medical treatment, but that he instead filed an informal grievance in February of 2010 (*id.*).  Defendant Ake denied the grievance, according to Plaintiff, because the medical staff did not view Plaintiff's medical need as serious (*id.*).  Plaintiff then filed a formal grievance in the office of Defendant Warden Ellis, which was forwarded to Defendant Dr. Gilo, the Chief Health Officer (*id.*).  There are no other allegations against either of these two Defendants in the complaint.

Plaintiff was briefly transferred away from GCI, and when he returned to GCI he told Ms. Lytle during his intake review that his condition was worsening (doc. 39 at 5–6).  She told him to come to sick call (*id.* at 6).  Instead of reporting to sick call, Plaintiff filed another grievance on March 30, 2010 (*id.*).  Defendant Ake denied Plaintiff's grievance and again instructed him to go to sick call (*id.*)  Plaintiff still did not go to sick call, but filed a formal grievance with Secretary Buss in April of 2010 (*id.*).  Plaintiff alleges that at some indeterminate point, he attempted to go to the medical department for emergency treatment after his pain continued to worsen but "was denied by his dorm correction officers," who are neither identified nor named as Defendants in the complaint (*id.*).

On May 31, 2010, Plaintiff experienced severe pain in his mid-section along with extreme swelling, so he declared a medical emergency (doc. 39 at 6).  He relates that he asked Mr. Wallace to see a doctor, but he was sent back to his dorm and told to return for sick call.  Plaintiff finally went to sick call on June 1, 2010, approximately six months after his annual examination during which he had complained of his condition to Ms. Lytle.  Mr. Wallace gave Plaintiff pain medication, and noted that Plaintiff' hernia could not be pushed back in at that time because it had increased in size.  Wallace told Plaintiff to wait until the swelling went down and then to push in the hernia with his fingers, and to obtain and wear a jockstrap (*id.* at 6).

Plaintiff states that he is now at Baker Correctional Institution and he still has not received surgery to repair the hernia. He alleges he is in "constant pain" and severely limited in his daily activities (*id.* at 6).

He claims that the Defendants showed deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He claims that the actions/inactions of the named Defendants were the function of an unlawful policy to deprive inmates suffering from hernia conditions of proper medical care. Plaintiff seeks corrective surgery, an order directing the DOC to reverse its policy of non-treatment of progressive hernias, and any additional relief and compensation that the court deems just, proper and equitable.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

1. whether the conduct complained of was committed by a person acting under color of state law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55, 101 L. Ed. 2d 40 (1988) (citations omitted); Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (citing West).

A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)); *see also* Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105–06. Furthermore, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  Farrow, *supra*; Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).  First, a plaintiff must set forth evidence of an objectively serious medical need.  Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543.  Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363.  Third, as with any tort claim, he must show that the injury was caused by the defendant's wrongful conduct.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)).  No liability arises for an official's failure to alleviate a significant risk that he should have perceived but did not, and imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

There are at least two different tests for determining whether a medical need is serious. Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008).  One test is whether the delay in treating the need worsens it. *Id.* (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187–88 (11th Cir. 1994)).  The other test is whether the need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Danley, 540 F.3d 1310–11 (quoting Hill, 40 F.3d at 1187); Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing Farrow, 320 F.3d at 1243 (quoting Hill, 40 F.3d at 1187)).  In either instance, the medical need must be "one that, if left unattended, poses a substantial risk of serious harm."  Farrow, 320 F.3d at 1243 (quoting Taylor, 221 F.3d at 1258 (quoting Farmer, 511 U.S. at 834)).

To satisfy the subjective element of deliberate indifference to a prisoner's serious medical need, Plaintiff must prove three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); *see also* Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004) (noting, after Farmer v. Brennan, 114 S. Ct. 1970 (1994), that gross negligence is needed to satisfy state-of-mind requirement for

deliberate indifference)); Townsend v. Jefferson County, 601 F. 3d 1152, 1158 (11th Cir. 2010) (same); Farrow, 320 F.3d at 1245–46 (citing McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980). Plaintiff must demonstrate that Defendants' response to a medical need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor, 221 F.3d at 1258.

     Obviously, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)); Hilton v. McHugh, 178 F. App'x 866 (11th Cir. 2006). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. Estelle, 429 U.S. at 107; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); Turner v. Solorzano, 2007 WL 1217882, at *2 (11th Cir. 2007). A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. Harris, 941 F.2d at 1505; Moots v. Secretary, Department of Corrections, 2011 WL 1657738 (11th Cir. 2011) (citing Harris); Waldrop, 871 F.2d at 1033; White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (no Eighth Amendment claim is stated when a doctor disagrees with the professional judgment of another doctor); Woodberry v. Simmons, 146 F. App'x 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation").

Nonetheless, the court can find that the medical treatment was so slight as to amount to no treatment at all, and therefore the mere fact that treatment was provided does not end the inquiry. Waldrop, 871 F.2d at 1035.

A disagreement with conservative treatment prescribed by medical professionals for a hernia does not necessarily form the basis for a successful federal constitutional claim. *See* Jackson v. Jackson, 456 F. App'x 813, 815 (11th Cir. 2012); Mixon v. Corizon, Inc. 2012 WL 671929 (S.D. Ala. 2012); Bradley v. Hallsworth, 2011 WL 4404116 (W.D. Mich. 2011); Webb v. Hamidullah, 281 F. App'x 159, 2008 WL 2337608 (4th Cir. 2008). Because it is common medical practice to postpone surgery until a hernia becomes strangulated, a delay in surgery on a non-strangulated hernia that is treatable without surgery does not violate an inmate's constitutional rights. Jackson, 456 F. App'x at 815. An inmate's belief that he should have had surgery, over a contrary opinion of medical professionals, is insufficient to support a deliberate indifference claim. *Id.* Although the Seventh Circuit has vacated and remanded a pre-suit dismissal of a prisoner's Eighth Amendment claim regarding medical treatment he received for a hernia, in that case, the plaintiff experienced "nausea, dizziness, headaches, vomiting, cramps, and [. . .] difficult, painful bowel movements" and, additionally, "hernia specialists [had] recommended immediate surgery for Plaintiff's condition." Williams v. Prison Health Services, Inc., 167 F. App'x 555 (7th Cir. 2006).

The allegations presented by Plaintiff in this case, even after amendment, do not rise even close to the level of severity of those presented, for instance, by the plaintiff in Williams. The frequency and nature of Plaintiff's complaints would not have placed Defendants on notice that Plaintiff was suffering from a "serious" medical condition. Plaintiff was told numerous times to report to sick call, but he repeatedly filed grievances instead of doing so, perhaps in an effort to avoid the associated co-payment (*see* doc. 39, exhs. IG, FG). In a grievance dated February of 2010, Plaintiff described his condition as "irritating and annoying," which—combined with his inaction with respect to seeking medical care—undermines the credibility of Plaintiff's claim that even he viewed his medical need as "serious" at the time. If Plaintiff failed to seek treatment and make Defendants aware of his need for treatment through the proper channels, they cannot be faulted for a failure to provide it. On the few occasions that Plaintiff did report to sick call, he received pain medication and instruction on managing the hernia (i.e., conservative treatment that was not

constitutionally inappropriate under the facts of this case). While Plaintiff might have preferred to undergo surgery, prisoners are not entitled to unqualified access to health care. Hudson v. McMillian, 503 U.S. at 9. And his disagreement with the conservative course of treatment he received on the few occasions he reported to sick call does not establish a constitutional violation. *See* Jackson, *supra*. Moreover, to the extent Plaintiff claims that there was a delay in treatment which resulted in worsening of his condition, again Plaintiff's lack of diligence in reporting to sick call as instructed is a factor that cannot be ignored. Plaintiff's complaint simply does not support a conclusion that (1) he had a serious medical need, or that (2) either Defendant Lytle or Defendant Wallace acted with maliciousness or deliberate indifference to Plaintiff's condition. The fact that Plaintiff still has not received surgical treatment for his hernia nearly two years later and after his transfer to another institution lends further support to the conclusion that Defendants acted within constitutional parameters when they provided Plaintiff with conservative treatment when he came to sick call in 2010. Thus, Plaintiff has failed to state a claim against them.

Although Wallace and Lytle were directly involved with Plaintiff's care, Defendants Ellis, Gilo and Ake appear to have neither any personal involvement with Plaintiff nor any role in alleged "policy-making"; their only involvement had to do with Plaintiff's grievances. Defendant Ake denied Plaintiff's inmate request regarding medical treatment for his hernia and Plaintiff's desire to avoid the $5.00 copayment on February 12, 2010. In so doing, Ake noted that after a thorough review of Plaintiff's medical file, Plaintiff had only made a single sick call visit complaining about a possible hernia (doc. 39, exh. IG). Ake denied a second grievance on the same issue on April 13, 2010, again advising Plaintiff to report to sick call in accordance with the procedures set forth in Plaintiff's inmate handbook (*id.*).

The only allegations against Ellis and Gilo are that Plaintiff filed a formal grievance with the Warden's office, which the warden received and forwarded to Dr. Gilo on February 20, 2010 (doc. 39 at 5). This allegation, which alone does not even reveal the result of the grievance, is insufficient to state a constitutional claim against either Ellis or Gilo. Plaintiff alleges in the same paragraph of his complaint that during this time his pain was "steadily increasing" (*id.*). However, in the grievance in question dated February 20, 2010, Plaintiff states only that his medical situation is "irritating and annoying," and he requests additional treatment from the medical department

"without a second or third charging fee" (*id.,* exh. FG). Plaintiff's grievance does not suggest and could not be reasonably construed as placing either Gilo or Ellis on notice that Plaintiff had a "serious medical need" (*id.*). A grievance response dated March 10, 2012, bearing both Gilo and Ellis's typed names, states that the issue was adequately resolved in the grievance dated February 12, 2010, and also, that just as it would be customary to be charged a fee on the outside to see a medical professional, the same applied in the DOC (*id.*, exh. IG). The response further notes that regardless of Plaintiff's ability to pay he would not be turned away for medical treatment or sick call (*id.*).[3]

As Plaintiff was previously advised, prison officials who were not involved in the alleged constitutional violation, and whose only roles involved the denial of administrative grievances or the failure to act, are not liable under § 1983 on a theory that failure to act constituted an acquiescence in the unconstitutional conduct, even if the grievance was denied. Grinter v. Knight, 532 F.3d 567 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)*, cert. denied* 530 U.S. 1264, 120 S. Ct. 2724, 147 L. Ed. 2d 988 (2000); *see also* Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state a § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990). Plaintiff has failed to state a claim against Gilo, Ellis or Ake based on the allegations in his most recent complaint, and his claim against these Defendants should be dismissed.

Finally, Plaintiff's claims against Defendants Buss and Tucker presumably are based on his belief that the DOC has a policy not to treat inmate hernias with corrective surgery, and that as the current and former DOC Secretary, the men bear some responsibility for this unconstitutional policy. Plaintiff states that he was told by Defendant Wallace and by other inmates that the DOC "rarely treats hernia with corrective surgery" (doc. 39 at 5). Even if the DOC has a policy to "rarely" treat

---

[3] This fact may be significant because Plaintiff's initial in forma pauperis motion, his history of partial payments to the court, and his most recent updated account statement reflect that Plaintiff has not had consistent access to funds in his prison trust account (*see* docs. 8, 12, 13, 43)

Case No: 5:10cv190/RS/EMT

hernias with corrective surgery, Plaintiff has not shown that he was injured as a result. As noted above, Plaintiff has not established the existence of a constitutional violation with respect to the treatment he received for his condition during the time period in question. Again, this conclusion is buttressed by the fact that even two years after the events complained of, the DOC has not found corrective surgery to be medically necessary.

As Plaintiff cannot successfully bring his action as a violation of 42 U.S.C. § 1983, the court is satisfied that Plaintiff's complaint lacks an arguable basis in law or fact and that it fails to state a claim.

Accordingly, it is respectfully **RECOMMENDED**:

That this cause be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida, this 16th day of July 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**